UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| AMY M. GUINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  2:13CV82 NCC |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the Commissioner's final decision denying Amy M. Guinn's application

for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.

§§ 401, *et seq.;* and application for supplemental security income under Title XVI

of the Act, 42 U.S.C. §§ 1381, *et seq.*  All matters are pending before the

undersigned United States Magistrate Judge, with consent of the parties, pursuant

to 28 U.S.C. § 636(c).  The Commissioner's final decision is supported by

substantial evidence on the record as a whole, and it is affirmed.

### I.  Procedural History

On January 12, 2011, plaintiff Amy M. Guinn filed applications for

disability insurance benefits (DIB) and supplemental security income (SSI)

claiming that she became disabled on November 3, 2006, because of depression, anxiety attacks, and migraine headaches. (Tr. 129-35, 136-41, 186.)[1] Plaintiff subsequently amended her alleged onset date to November 25, 2010. (Tr. 34.) On February 14, 2011, the Social Security Administration denied plaintiff's claims for benefits. (Tr. 66-69, 72-78.) Upon plaintiff's request, a hearing was held before an ALJ on April 10, 2012, at which plaintiff and a vocational expert testified. (Tr. 30-60.) On April 20, 2012, the ALJ issued a decision denying plaintiff's claims for benefits, finding plaintiff able to perform work as it exists in significant numbers in the national economy. (Tr. 8-24.) On August 2, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 2-5.) The ALJ's decision thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In the instant action for judicial review, plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole, arguing that the ALJ failed to accord proper weight to the opinions of plaintiff's treating physicians regarding the effects of her mental impairments. Plaintiff requests that the matter be reversed and remanded to the Commissioner for an award of benefits or for further proceedings.

---

[1] Plaintiff previously filed an application for DIB, which was denied on May 13, 2010. (*See* Tr. 61.) Plaintiff's request for a hearing on this application was dismissed on November 24, 2010. (Tr. 62-65.) In the instant action on plaintiff's current applications for benefits, the administrative law judge (ALJ) determined not to reopen this previous application. (Tr. 11.) Plaintiff does not challenge the ALJ's decision not to reopen.

Because the ALJ committed no legal error and substantial evidence on the record as a whole supports his decision, the Commissioner's final decision that plaintiff was not disabled is affirmed.[2]

## II.  Relevant Testimonial Evidence Before the ALJ

A.  <u>Plaintiff's Testimony</u>

At the hearing on April 10, 2012, plaintiff testified in response to questions posed by the ALJ and counsel.

At the time of the hearing, plaintiff was thirty-eight years of age.  Plaintiff stands five-feet, four inches tall and weighs 290 pounds.  Plaintiff is single and lives in a house with her parents.  (Tr. 36-37.)  Plaintiff graduated from high school and participated in vocational training at a community college.  (Tr. 39.)

Plaintiff's Work History Report shows plaintiff to have worked as a cashier, sales person, and dispatch coordinator at Wal-Mart Stores from April 1991 to August 1996.  From October 1996 to March 1999, plaintiff worked as a cashier and in customer service at Service Merchandise.  From March to September 1999, plaintiff worked as an office manager at Bissell Auto & Body.  From September 1999 to October 2001, plaintiff worked in billing and data entry for AAA Trailer

---

[2] The undersigned has reviewed the entirety of the administrative record in determining whether the Commissioner's adverse decision is supported by substantial evidence.  Inasmuch as plaintiff challenges the decision only as it relates to opinion evidence regarding her mental impairments and not as it relates to any physical impairment, the recitation of specific evidence in this Memorandum and Order is limited to only that relating to the issue raised by plaintiff on this appeal.

Services.  From June to December 2002, plaintiff worked in customer service and in sales at The Bear Factory.  From December 2002 to August 2003, plaintiff worked in customer service and at call centers through a temporary employment service.  From August 2003 to April 2004, plaintiff worked as a customer service representative at Best Buy Home Care.  From October 2004 to November 2006, plaintiff worked as a cashier and in photo finishing at Wal-Mart Stores.  From November 2008 to February 2009, plaintiff worked as a sales representative for Stark Bros. Fulfillment Center.  (Tr. 161-63, 230-32.)

Plaintiff testified that she has random "meltdown" episodes when she is under stress during which time she cries and feels like she is crawling out of her skin.  Plaintiff testified that small things trigger her meltdowns and that she sometimes is not able to resume a normal course of activity until the following day.  (Tr. 42-43, 52.)  Plaintiff testified that she does not want to be around people during such episodes and that she basically hides in her room and does not answer the telephone.  Plaintiff testified that the episodes are becoming more frequent and that she experiences them at least every week – or five or six times a month.  (Tr. 43, 50.)

Plaintiff testified that she has difficulty with her focus and memory in that she will go to a room to perform a particular task and then forgets why she went into the room, or will forget a three-step recipe and will need to keep referring to it.

Plaintiff testified that her parents often remind her to do things, such as taking a bath or feeding the dogs. (Tr. 45-46.)

Plaintiff testified that she does not sleep well and does not take sleep aids for fear of becoming addicted to them. Plaintiff testified that she sometimes is awake for twenty-four hours and then sleeps for days. (Tr. 51.)

Plaintiff testified that she has been going to the Adult Psychiatry Clinic at the University of Missouri for two years and usually sees a psychiatrist intern every three months. Plaintiff testified that the frequency of her appointments recently increased to once every month, however, because of the additional stress she experiences on account of her mother's recent cancer diagnosis. Plaintiff testified that the dosage of her medication recently increased as well. (Tr. 41-42, 49.)

As to her daily activities, plaintiff testified that she gets up, gets something to eat, and then usually goes back to bed or lies on the couch to sleep or watch television. (Tr. 51-52.) Plaintiff testified that she spends up to five days a week in her pajamas because she has difficulty getting out of bed. (Tr. 45-46.) Plaintiff testified that she runs errands when she is having a good day. (Tr. 51.) Plaintiff testified that she helps her parents and drives at least a couple of times each week to doctors' appointments or to run errands. (Tr. 37-38.) Plaintiff testified that she goes to the grocery store when it is not busy because she feels suffocated in big

crowds.  Plaintiff testified that she no longer socializes with friends because she does not go out and her friends have stopped calling or talking to her because they do not understand depression.  (Tr. 44-45.)

B.    Testimony of Vocational Expert

Bonnie Ward, a vocational expert, testified at the hearing in response to questions posed by the ALJ and counsel.

Ms. Ward classified plaintiff's past work as an accounts receivable clerk as sedentary and having an SVP (specific vocational preparation) level of 5; as a photo lab worker as light and having an SVP level of 3; as a customer service representative as sedentary and having an SVP level of 4; and as a customer service clerk as light and having an SVP level of 4.  (Tr. 54.)

The ALJ asked Ms. Ward to assume an individual of plaintiff's age, education, and work experience and to further assume that mental impairments precluded sustained work activity for a full eight-hour workday on a regular and sustained basis.  Ms. Ward testified that such a person could not perform any of plaintiff's past work or any other competitive work.  (Tr. 55.)

The ALJ then asked Ms. Ward to assume an individual of plaintiff's age, education, and work experience and to further assume that the individual had no exertional limitations and was limited to low stress jobs, defined as "only occasional decision making required, only occasional changes in the work setting,

and only occasional judgment is required on the job. Additionally, the individual can only have occasional interaction with the public, coworkers, supervisors, and they're going to miss one day of work per month." (Tr. 55-56.) Ms. Ward testified that such a person could not perform any of plaintiff's past relevant work but could perform other light exertional work in the national economy, such as small products assembler, of which 523 such jobs exist in the State of Missouri and 175,000 nationally; and motel housekeeper, of which 3,700 such jobs exist in the State of Missouri and 180,000 nationally. Ms. Ward further testified that such a person could perform medium exertional work as a janitor, of which 4,400 such jobs exist in the State of Missouri and 157,000 nationally. Ms. Ward testified that the characteristics of this hypothetical would reduce the sedentary job base by about seventy-five to eighty-five percent. (Tr. 56-57.)

Ms. Ward testified that a person who was absent from work fifteen days a month could not perform any competitive work. Ms. Ward testified that a person limited to unskilled work would not be able to miss more than two days of work a month on a continuing basis. (Tr. 57-58.) Ms. Ward further testified that a person moderately limited in her ability to concentrate for extended periods as well as in her ability to work with others without being distracted, to understand and remember detailed instructions, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers, and to respond

appropriately to changes in the work setting could continue to maintain employment. (Tr. 58-59.)

## III. Relevant Medical Evidence Before the ALJ

A review of the record shows plaintiff to have experienced symptoms of depression since 2006 and that she received treatment through July 2010 from her primary care physician, Dr. James P. Koller. Such treatment consisted of medication management, which included prescriptions for Effexor, Cymbalta, Celexa, and Pristiq. Plaintiff's condition improved with medication, and she repeatedly was noted to be doing well. The record shows plaintiff's depression to have waxed and waned and to be episodic in nature, primarily triggered by family health issues and increased work responsibilities. Plaintiff's medication was adjusted during these periods of exacerbation, to which she responded favorably. In addition, plaintiff was periodically referred for psychotherapy or counseling, but nothing in the record demonstrates that plaintiff followed up with any of these referrals. Similarly, the record shows plaintiff to have been instructed on occasion to visit a psychiatrist, but no treatment by a psychiatrist appears in the record until October 2010. (Tr. 346-55, 387-95, 437-56, 508-30.)

Plaintiff stopped working in February 2009. Plaintiff's medications were adjusted throughout the remainder of 2009 in response to plaintiff's complaints of lack of motivation and continuous sleeping. By November 2009, plaintiff had

been tapered off of Celexa, and she was taking only Pristiq for her depression. Plaintiff was helping her dad at the time, who needed support because of health reasons. (Tr. 379-85.) On March 2, 2010, Dr. Koller noted plaintiff to be doing well with Pristiq. (Tr. 658.)

Plaintiff visited Dr. Koller on July 20, 2010, and reported that she had been seeing a psychiatrist and was scheduled to see someone new.[3] Plaintiff reported having a loss of interest in all activities, appetite disturbance, sleep difficulties, psychomotor agitation, irritability, anxiety attacks, thoughts of suicide, trouble concentrating, feelings of guilt and worthlessness, and decreased energy. Plaintiff reported that she just sits on the couch when her depression is at its worst and that it is difficult for her to eat or take a bath. Dr. Koller noted plaintiff's episodes of decompensation to consist of panic attacks while at work. Dr. Koller noted that plaintiff was seeking disability and that plaintiff's counsel requested that he complete related paperwork. Dr. Koller did not conduct an examination that date. Dr. Koller determined for plaintiff to continue on her same medications. (Tr. 653-55.)

On July 29, 2010, Dr. Koller completed an "Assessment of Claimant's Ability To Do Work-Related Activities (Mental)" in which he opined that plaintiff's impairment caused extreme limitations in maintaining social functioning as well as extreme episodes of decompensation of extended duration. Dr. Koller

_____

[3] There is no medical record documenting that plaintiff saw a psychiatrist prior to October 2010.

further opined that plaintiff experienced marked limitations in maintaining concentration, persistence, or pace and moderate limitations in activities of daily living. Dr. Koller further opined that plaintiff had no limitations in her ability to follow work rules, work in coordination with or in proximity to others without being distracted by them, function independently, ask simple questions or request assistance, and maintain socially appropriate behavior. Dr. Koller also opined that plaintiff had mild limitations in her ability to get along with coworkers without distracting them or exhibiting behavioral extremes; accept instructions and respond appropriately to criticism from supervisors; understand, remember, and carry out simple job instructions; travel in unfamiliar places or use public transportation; and relate predictably in social situations. Dr. Koller also opined that plaintiff experienced moderate limitations in her ability to understand, remember, and carry out complex job instructions; understand, remember, and carry out detailed but not complex job instructions; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Dr. Koller opined that plaintiff experienced marked limitations in her ability to interact appropriately with the general public; deal with work stresses; maintain attention for extended periods, two hours at a time, throughout an eight-hour workday; complete a normal workday and workweek without interruptions from psychologically-based symptoms; and perform at a consistent pace without an

unreasonable number and length of rest breaks.  Dr. Koller reported that plaintiff experienced her impairments at the described severity since July 2006.  (Tr. 585-88.)

On that same date, July 29, 2010, Dr. Koller completed a "Medical Opinion to Medical Listing 12.04" in which he opined, *inter alia,* that plaintiff's affective disorder met the Listing in that it causes plaintiff to experience marked restrictions in activities of daily living; in maintaining social functioning; and in concentration, persistence, or pace; and to experience repeated episodes of decompensation of extended duration.  Dr. Koller further opined that plaintiff's impairment was a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause plaintiff to decompensate.  (Tr. 581-82.)  Dr. Koller also completed a "Medical Opinion to Medical Listing 12.06" in which he opined, *inter alia,* that plaintiff's anxiety-related disorder met the Listing in that it causes plaintiff to experience marked restrictions in maintaining social functioning and in concentration, persistence, or pace; and to experience repeated episodes of decompensation of extended duration.  Dr. Koller further opined that plaintiff's impairment resulted in her complete inability to function independently outside the area of her home.  (Tr. 583-84.)

On October 5, 2010, plaintiff visited Dr. Okah Justin Anyokwu at the

Psychiatry Clinic at University Hospital and reported doing well on her current medication and that she had more good days than bad days.  Plaintiff reported continued anxiety in crowded places and that she mostly stayed home and avoided going out or shopping.  Plaintiff reported being able to concentrate while watching television and playing computer games.  Plaintiff reported having no guilty feelings and that she had good energy.  Plaintiff reported that she had suicidal thoughts but no plan.  Plaintiff reported this it was difficult for her to relax because of her anxiety.  Plaintiff reported that she worried about everything and had panic attacks, but had experienced none in the recent months.  Plaintiff reported not being able to cope with working.  Dr. Anyokwu noted plaintiff's current medications to be Pristiq, Amitriptyline for migraines, and Ambien for sleep.  Mental status examination was normal in all respects.  Plaintiff was alert and oriented in three spheres.  Plaintiff was pleasant, cooperative, and made good eye contact.  Plaintiff's mood was euthymic and her affect congruent.  Plaintiff's thought flow was normal and logical, and her thought content was normal.  Plaintiff's memory was normal, and her judgment and insight were good.  Dr. Anyokwu diagnosed plaintiff with major depressive disorder and generalized anxiety disorder and assigned a Global Assessment of Functioning (GAF) score of 48.[4]  Plaintiff was instructed to continue on her current medications and to return

---

[4] A GAF score considers "psychological, social, and occupational functioning on a hypothetical

for follow up in three months.  (Tr. 590-93.)

Plaintiff returned to Dr. Anyokwu three weeks later on October 22, 2010, and reported that she was doing well and was in a stable mood.  Plaintiff reported continued anxiety in group settings.  Plaintiff reported no guilty feelings or thoughts of suicide or homicide.  Plaintiff reported having good energy and good concentration.  Plaintiff felt her current medication was helping.  Mental status examination continued to be normal.  Dr. Anyokwu continued in his diagnoses and assigned a GAF score of 55.[5]  Plaintiff was continued on her current medications and was instructed to follow up in three months.  (Tr. 594-96.)

On February 10, 2011, Terry Dunn, Ph.D., a psychological consultant with disability determinations, completed a Psychiatric Review Technique Form in which he opined that plaintiff's recurrent major depressive disorder and generalized anxiety disorder caused mild limitations in activities of daily living; moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace; and resulted in no repeated episodes of

---

continuum of mental health/illness." *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 34 (4th ed. 2000) (DSM-IV-TR).  A GAF score of 41-50 indicates serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *Id.*

[5] A GAF score of 51 to 60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  DSM-IV-TR 34.

decompensation of extended duration.  (Tr. 602-13.)  In a Mental Residual

Functional Capacity (RFC) Assessment completed that same date, Dr. Dunn

opined that in the domain of Understanding and Memory, plaintiff was moderately

limited in her ability to understand and remember detailed instructions, but was not

otherwise limited.  In the domain of Sustained Concentration and Persistence, Dr.

Dunn opined that plaintiff was moderately limited in her ability to carry out

detailed instructions, maintain attention and concentration for extended periods,

and work in coordination with or proximity to others without being distracted by

them, but was not otherwise limited.  In the domain of Social Interaction, Dr. Dunn

opined that plaintiff was moderately limited in her ability to accept instructions and

respond appropriately to criticism from supervisors, and to get along with

coworkers or peers without distracting them or exhibiting behavioral extremes, but

was not otherwise limited.  With Adaptation, Dr. Dunn opined that plaintiff was

moderately limited in her ability to respond appropriately to changes in the work

setting, but was not otherwise limited.  Dr. Dunn concluded that plaintiff retained

the ability to understand, remember, and carry out simple instructions; maintain

adequate attendance and sustain an ordinary routine without special supervision;

interact appropriately with peers and supervisors; adapt to most usual changes

common to a competitive work setting; and would benefit from limited

interpersonal contact in the work setting to reduce stress.  (Tr. 614-16.)

On March 1, 2011, plaintiff visited Dr. Anyokwu and reported that she continued to have panic attacks and that they last about two minutes. Plaintiff reported that her most recent panic attack occurred one week prior. Plaintiff reported that she sometimes struggles to get out of bed but that she has more good days than bad days. Plaintiff reported having passive suicidal thoughts but no plan or intent. Plaintiff reported that her current medications helped her and she wanted to continue with them. Dr. Anyokwu noted that plaintiff had been unable to cope with the stress of her previous jobs at a photo lab and at a call center. Mental status examination was normal in all respects. Plaintiff was oriented in three spheres. Plaintiff was pleasant, cooperative, and made good eye contact. Plaintiff's mood was euthymic and her affect was normal. Plaintiff's thought flow was normal and logical, and her thought content was negative for suicidal or homicidal ideations. Plaintiff had good judgment and insight. Dr. Anyokwu diagnosed plaintiff with recurrent major depressive disorder and generalized anxiety disorder and assigned a GAF score of 50. Plaintiff was instructed to continue on her current medications and to return for follow up in six months "as requested by the patient." (Tr. 684-85.)

On April 20, 2011, Dr. Anyokwu completed an "Assessment of Claimant's Ability To Do Work-Related Activities (Mental)" in which he opined that plaintiff's impairment caused marked limitations in maintaining social functioning

as well as extreme episodes of decompensation of extended duration. Dr. Anyokwu further opined that plaintiff experienced moderate limitations in maintaining concentration, persistence, or pace and in activities of daily living. Dr. Anyokwu further opined that plaintiff had no limitations in her ability to ask simple questions or request assistance, or in her ability to maintain socially appropriate behavior. Dr. Anyokwu opined that plaintiff had mild limitations in her ability to understand, remember, and carry out simple job instructions. Dr. Anyokwu further opined that plaintiff had moderate limitations in her ability to get along with coworkers without distracting them or exhibiting behavioral extremes; understand, remember, and carry out detailed but not complex job instructions; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Dr. Anyokwu also opined that plaintiff experienced marked limitations in her ability to function independently; maintain attention for extended periods, two hours at a time, throughout an eight-hour workday; and understand, remember, and carry out complex job instructions. Finally, Dr. Anyokwu opined that plaintiff experienced extreme limitations in her ability to work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; deal with work stresses; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an

unreasonable number and length of rest breaks; travel in unfamiliar places or use public transportation; and relate predictably in social situations.  Dr. Anyokwu reported that plaintiff experienced her impairments at the described severity since 2000.  (Tr. 622-25.)

On that same date, April 20, 2011, Dr. Anyokwu completed a "Medical Opinion to Medical Listing 12.04" in which he opined, *inter alia,* that plaintiff's affective disorder met the Listing in that it caused marked restrictions in activities of daily living and in maintaining social functioning.  Dr. Anyokwu further opined that plaintiff's impairment was a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause plaintiff to decompensate and, further, that plaintiff had a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such arrangement.  (Tr. 627-28.)  Dr. Anyokwu also completed a "Medical Opinion to Medical Listing 12.06" in which he opined, *inter alia,* that plaintiff's anxiety-related disorder met the Listing in that it causes plaintiff to experience marked restrictions in activities of daily living; in maintaining social functioning; and in concentration, persistence, or pace.  Dr. Anyokwu further opined that plaintiff's impairment resulted in her complete inability to function independently outside the area of her home.  (Tr. 629-30.)

Plaintiff visited Dr. Anyokwu on June 7, 2011, and reported that she was doing "really good." Plaintiff reported being more energetic. Plaintiff attributed her improvement to medication and weight loss. Plaintiff reported having coped well with recent stressors and that she thinks more positively. Plaintiff reported that she generally avoids situations that make her panicky, and that she has had two panic attacks since her last visit in March. Mental status examination remained unchanged and was normal in all respects. Dr. Anyokwu continued in his diagnoses and assigned a GAF score of 55. Plaintiff was continued on her medications and was referred for therapy. (Tr. 681-83.)

Plaintiff visited Dr. Koller's office on July 22, 2011, regarding a recent onset of shoulder pain and was seen by Dr. Koller and Dr. Kevin A. Lease. Plaintiff's history of depression was noted and she reported that her mood was good. No change was made to plaintiff's "mood medications." (Tr. 645-49.)

On September 6, 2011, plaintiff visited Dr. Wilson O. Igbrude at the Psychiatry Clinic at University Hospital. Plaintiff reported being relatively stable but complained of a recent bad day wherein she was irritable and did not want to get out of bed. Plaintiff reported having these bad days about once every two or three weeks and of having panic attacks once or twice a month. Plaintiff reported her sleep to be good. Mental status examination was normal in all respects. Plaintiff was noted to be somewhat cheerful. Dr. Igbrude diagnosed plaintiff with

recurrent major depressive disorder and generalized anxiety disorder and assigned a GAF score of 60. No change was made to plaintiff's medications. (Tr. 677-79.)

Plaintiff returned to Dr. Igbrude on October 7, 2011, and complained of an increase in anger and irritability. Plaintiff reported that her mood continued to fluctuate and that she had depressive days three or four times a week. Mental status examination showed plaintiff to be somewhat depressed but was normal in all other respects. Dr. Igbrude continued in his diagnoses and assigned a GAF score of 55. Plaintiff was prescribed Lamictal. (Tr. 674-76.)

Plaintiff visited Dr. Lease on October 31, 2011, and reported that she recently started taking Lamictal for depression and that her mood was good. Plaintiff's prescription for Elavil was refilled. (Tr. 639-41.)

Plaintiff visited Dr. Igbrude on December 23, 2011, and reported that she was doing really well on Lamictal. Plaintiff's mother also reported a significant improvement in mood. Plaintiff reported that her mood was stable on Lamictal alone and that she stopped taking Pristiq. Mental status examination was normal in all respects. Dr. Igbrude continued to diagnose plaintiff with generalized anxiety disorder and determined plaintiff's major depressive disorder to be in remission. A GAF score of 60 was assigned. Plaintiff was instructed to continue with Lamictal and to return for follow up in three months. (Tr. 671-73.)

On January 27, 2012, plaintiff visited Dr. Igbrude and reported an increase

in anxiety and fluctuating mood after having learned that her mother had been diagnosed with cancer. Plaintiff also reported that her father had significant health issues. Plaintiff reported her concentration and attention span to be occasionally impaired. Mental status examination showed plaintiff's mood to be somewhat anxious but was otherwise normal in all respects. Dr. Igbrude diagnosed plaintiff with major depressive disorder, recurrent, mild and generalized anxiety disorder. Dr. Igbrude assigned a GAF score of 50. Plaintiff was instructed to increase her dosage of Lamictal and to return in one month. (Tr. 668-70.) On February 27, Dr. Igbrude continued plaintiff on her medications. (Tr. 666.)

Plaintiff visited Dr. Igbrude on March 16, 2012, and reported that she was doing okay but that she was not sleeping very well. Plaintiff reported that she had been turned down for Medicaid because her paperwork was not completed correctly. Plaintiff reported increased worry and that she felt like she was a nuisance. (Tr. 667.)

On that same date, March 16, 2012, Dr. Igbrude completed a Medical Source Statement (MSS) in which he opined that in the domain of Understanding and Memory, plaintiff was markedly limited in her ability to understand and remember detailed instructions, and moderately limited in her ability to remember locations and work-like procedures, and to understand and remember one- or two-step instructions. In the domain of Sustained Concentration and Persistence, Dr.

Igbrude opined that plaintiff was markedly limited in her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically-based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest breaks. Dr. Igbrude further opined that plaintiff was moderately limited in her ability to carry out simple one- or two-step instructions; to sustain an ordinary routine without supervision; and to make simple work-related decisions. In the domain of Social Interaction, Dr. Igbrude opined that plaintiff was markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors. Dr. Igbrude further opined that plaintiff was moderately limited in her ability to ask simple questions or request assistance, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Igbrude opined that plaintiff was not significantly limited in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. In the domain of Adaptation, Dr. Igbrude opined that plaintiff was extremely limited in her ability to travel in unfamiliar places, and to set realistic goals or make plans independently of others. Dr. Igbrude also opined that plaintiff

was moderately limited in her ability to respond appropriately to changes in the work setting, and had no significant limitations in her ability to be aware of normal hazards and take appropriate precautions.  (Tr. 631-32.)

## IV.  The ALJ's Decision

The ALJ found plaintiff to meet the insured status requirements of the Social Security Act through June 30, 2012.  The ALJ found plaintiff not to have engaged in substantial gainful activity since November 25, 2010, the alleged onset date of disability.  The ALJ found plaintiff's depression, anxiety, headaches, and obesity to be severe impairments, but that such impairments, either singly or in combination, did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13-14.)  Upon reviewing and weighing the evidence of record, the ALJ determined plaintiff to have the RFC to perform work at all exertional levels, except that she

> must work in a low stress job defined as having only occasional decision making required, only occasional changes in the work setting and only occasional judgment required on the job.  She can have only occasional interaction with the public, co-workers and supervisors. She will miss one day of work per month.

(Tr. 15.)  In reaching this finding, the ALJ accorded little weight to the opinion evidence rendered by Drs. Koller, Anyokwu, and Igbrude.  (Tr. 20-21.)

The ALJ determined that plaintiff's RFC precluded her from performing any of her past relevant work.  Considering plaintiff's age, education, work experience,

and RFC, the ALJ determined that vocational expert testimony supported a finding that plaintiff could perform other work as it exists in significant numbers in the national economy, and specifically, small products assembler, janitor, and motel housekeeper. The ALJ thus found plaintiff not to be under a disability from November 25, 2010, through the date of the decision. (Tr. 22-23.)

## V. Discussion

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a

five-step evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding

whether the claimant is engaged in substantial gainful activity.  If the claimant is

working, disability benefits are denied.  Next, the Commissioner decides whether

the claimant has a "severe" impairment or combination of impairments, meaning

that which significantly limits her ability to do basic work activities.  If the

claimant's impairment(s) is not severe, then she is not disabled.  The Commissioner

then determines whether claimant's impairment(s) meets or equals one of the

impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If claimant's

impairment(s) is equivalent to one of the listed impairments, she is conclusively

disabled.  At the fourth step, the Commissioner establishes whether the claimant

can perform her past relevant work.  If so, the claimant is not disabled.  Finally, the

Commissioner evaluates various factors to determine whether the claimant is

capable of performing any other work in the economy.  If not, the claimant is

declared disabled and becomes entitled to disability benefits.

 The decision of the Commissioner must be affirmed if it is supported by

substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir.

2002).  Substantial evidence is less than a preponderance but enough that a

reasonable person would find it adequate to support the conclusion.  *Johnson v.*

*Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test,"

however, is "more than a mere search of the record for evidence supporting the

Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007)

(internal quotation marks and citation omitted).  "Substantial evidence on the

record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation

marks and citations omitted).

To determine whether the Commissioner's decision is supported by

substantial evidence on the record as a whole, the Court must review the entire

administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and
       non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's
       impairments.

6.    The testimony of vocational experts when required which is
       based upon a proper hypothetical question which sets forth the
       claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir.

1992) (internal citations omitted).  The Court must also consider any evidence

which fairly detracts from the Commissioner's decision.  *Coleman*, 498 F.3d at

770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.  *Pearsall*, 274 F.3d at 1217 (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

On this appeal for judicial review, plaintiff contends that the ALJ erred in discounting the opinion evidence offered by her treating physicians, rendering it impossible for the ALJ to determine plaintiff's ability to work without improperly engaging in medical conjecture.  Plaintiff argues that the ALJ should have sought clarifying opinions from her treating physicians or obtained an opinion from a medical advisor.  For the following reasons, the ALJ committed no legal error, and his decision is supported by substantial evidence on the record as a whole.

In evaluating opinion evidence, the Regulations require the ALJ to explain in the decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources.  *See* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).  The Regulations require that more weight be given to the

opinions of treating physicians than other sources. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)*; see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating physician's opinion is not given controlling weight, the Commissioner must look to various factors in determining what weight to accord the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the treating physician provides support for his findings, whether other evidence in the record is consistent with the treating physician's findings, and the treating physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The

Regulations further provide that the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Here, the reasons given by the ALJ to accord little weight to the opinions of plaintiff's treating physicians are supported by substantial evidence on the record as a whole. As such, the Court defers to the ALJ's determination.

1. *Dr. Koller*

In July 2010, Dr. Koller completed an "Assessment of Claimant's Ability To Do Work-Related Activities (Mental)" wherein he opined that plaintiff's impairment caused extreme limitations in maintaining social functioning as well as extreme episodes of decompensation of extended duration. Dr. Koller further opined that plaintiff experienced marked limitations in maintaining concentration, persistence, or pace and moderate limitations in activities of daily living. Completing a detailed checklist, Dr. Koller reported that plaintiff experienced marked limitations in her ability to interact appropriately with the general public; deal with work stresses; maintain attention for extended periods; complete a normal workday and workweek without interruptions from psychologically-based symptoms; and perform at a consistent pace without an unreasonable number and length of rest breaks. Dr. Koller also completed checklist forms indicating that

plaintiff's mental impairments met Listings 12.04 and 12.06 of the Listing of Impairments.

The ALJ accorded little weight to these opinions, finding Dr. Koller not to be familiar with agency definitions and agency standards; that the opinions were not consistent with his own treatment notes; that the opinions were rendered without knowledge of other contrary evidence in the record; that the opinions were rendered in a checklist format; and that Dr. Koller provided no explanation to support his opinions. These reasons are supported by substantial evidence on the record as a whole and constitute good reasons to discount this treating physician's opinions.

First, the ALJ properly reasoned that Dr. Koller made his findings without being familiar with agency definitions and standards, specifically noting that Dr. Koller found plaintiff's "episodes of decompensation" to consist of her reports of panic attacks at work. As noted by the ALJ, however, the reports as documented in the record do not meet the Regulations' definition of "repeated episodes of decompensation of extended duration" required to meet a Listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). An ALJ is permitted to consider the extent to which a physician understands disability requirements and standards when considering what weight to accord the physician's opinion. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

The ALJ also properly found the limitations described in these assessments to be inconsistent with Dr. Koller's own treatment notes. "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue,* 578 F.3d 838, 842 (8th Cir. 2009); *see also Hacker v. Barnhart,* 459 F.3d 934, 937 (8th Cir. 2006). Indeed, as noted by the ALJ, on the same date Dr. Koller completed this disability paperwork, plaintiff's visit with him resulted in no change in plaintiff's treatment regimen, including no adjustment to medication or referrals to specialists. In addition, a review of Dr. Koller's treatment notes *in toto* shows plaintiff to have experienced intermittent symptoms of anxiety and depression, primarily episodic in nature. The record also shows Dr. Koller's adjustments to plaintiff's medication to resolve her symptoms during those periods of exacerbation. Notably, even during the limited periods of increased symptoms, Dr. Koller made no observations in any of his treatment notes showing plaintiff to experience the significant and debilitating limitations as set out in his July 2010 assessments. To the extent these limitations mimic plaintiff's complaints made to Dr. Koller the same day he completed this disability paperwork, the undersigned notes that an opinion is not entitled to controlling weight where it is largely based on a claimant's subjective complaints rather than on objective findings. *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012). The longitudinal picture of plaintiff's treatment with Dr.

Koller simply fails to demonstrate that she experienced the marked and extreme limitations set out in his July 2010 assessments. Where the limitations set out in a treating physician's assessment "stand alone" and were "never mentioned in [the physician's] numerous records or treatment" nor supported by "any objective testing or reasoning," the ALJ's decision to discount the treating physician's statement is not error. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Because none of Dr. Koller's records note any such limitations, the ALJ did not err in according less than controlling weight to his July 2010 assessments. *Charles v. Barnhart*, 375 F.3d 777, 784 (8th Cir. 2004).

The ALJ also determined to discount Dr. Koller's opinions inasmuch as they were rendered without knowledge of other evidence in the record, and specifically, that plaintiff did not receive care from a mental health professional until three months after he opined that plaintiff met the Listing requirements, and that plaintiff thereafter did not seek follow up mental health care until March 2011. In addition, a review of the record shows that after Dr. Koller rendered his July 2010 opinions of disability, plaintiff did not return to Dr. Koller until one year later and that, in the interim, plaintiff saw a mental health professional on only four occasions, consistently exhibited normal mental status examinations, and was doing well on her medication. *Cf. Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (ALJ properly accorded no weight to treating physician's opinion of preclusive

limitations because record evidence showed nearly all mental status examinations to reveal no abnormalities and to be inconsistent with claimant's complaints).  An ALJ is permitted to consider the extent to which a physician is familiar with other evidence in the case record when considering what weight to accord the physician's opinion.  20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

Finally, the ALJ noted that Dr. Koller's opinions were rendered in a checklist format and that he failed to provide any explanation to support his opinions.  These reasons are permissible bases upon which an ALJ may discount a treating physician's opinion.  *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (vague and conclusory checklist assessments have limited evidentiary value); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

2.      *Dr. Anyokwu*

In April 2011, Dr. Anyokwu completed an "Assessment of Claimant's Ability To Do Work-Related Activities (Mental)" wherein he opined that plaintiff's impairment caused marked limitations in maintaining social functioning as well as extreme episodes of decompensation of extended duration.  Completing a detailed checklist, Dr. Anyokwu reported that plaintiff experienced marked limitations in her ability to function independently; maintain attention for extended periods; and understand, remember, and carry out complex job instructions; and,

further, that she experienced extreme limitations in her ability to work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; deal with work stresses; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest breaks; travel in unfamiliar places or use public transportation; and relate predictably in social situations. Dr. Anyokwu also completed checklist forms indicating that plaintiff's mental impairments met Listings 12.04 and 12.06 of the Listing of Impairments. In addition, Dr. Anyokwu opined that plaintiff experienced these limitations at the reported severity since 2000.

The ALJ accorded little weight to these opinions, finding Dr. Anyokwu not to be familiar with agency definitions and agency standards; that the opinions were not consistent with his own treatment notes; that the opinions were rendered without consideration that plaintiff failed to follow up with recommended therapy; and that the opinions were inconsistent with other substantial evidence on the record as a whole. These reasons are supported by substantial evidence and constitute good reasons to discount this treating physician's opinions.

As discussed *supra,* the ALJ was permitted to consider this physician's lack of familiarity with disability regulations and standards in determining what weight to accord his opinions. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Dr.

Anyokwu's lack of familiarity with the Regulations is demonstrated by his finding that plaintiff had been unable to function outside of a highly supportive living arrangement (presumably her home) for one year or more and was completely unable to function independently outside her home. A review of the entirety of the record, however, including Dr. Anyokwu's treatment notes, fails to show such an inability to function outside "highly structured settings," as defined by the Regulations in order to meet a Listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F). This is demonstrated by plaintiff's ability to travel alone outside her home on a weekly basis to run errands, including to the grocery store and to doctors' appointments, as well as her ability to care for her ill parents.

The ALJ's finding that Dr. Anyokwu's opinions were not consistent with his own treatment notes is likewise supported by substantial evidence. As noted by the ALJ, Dr. Anyokwu saw plaintiff on only a few occasions prior to rendering his opinions, and on each occasion plaintiff reported doing well on simple medication management. In addition, a review of Dr. Anyokwu's treatment notes shows plaintiff to have consistently exhibited normal mental status examinations, with no abnormalities noted. *Cf. Halverson,* 600 F.3d at 930. At no time did Dr. Anyokwu make any observations in his treatment notes that plaintiff experienced the significant and debilitating limitations as set out in his April 2011 assessments. Because of these inconsistencies between Dr. Anyokwu's treatment notes and his

opinions rendered in April 2011, the ALJ did not err in according little weight to this opinion evidence. *Charles,* 375 F.3d at 784; *Hogan,* 239 F.3d at 961.

To the extent the ALJ determined to accord little weight to Dr. Anyokwu's opinions because of plaintiff's failure to follow through with his treatment recommendation to participate in therapy, the ALJ did not err. Where a treating physician renders an opinion assessing the degree of a claimant's limitations but does not account for the claimant's noncompliance with treatment instructions, an ALJ does not err in according less than controlling weight to the physician's opinion as to such limitations. *Owen v. Astrue*, 551 F.3d 792, 799-800 (8th Cir. 2008).

Finally, as noted by the ALJ, Dr. Anyokwu's opinions of debilitating limitations were inconsistent with other substantial evidence on the record. As detailed above, the record shows that plaintiff's symptoms significantly improved with medication; that multiple physicians consistently and repeatedly made clinical findings of normal mental status examinations; that plaintiff's daily activities showed her able to care for her own needs as well as the needs of her ill parents; and that plaintiff exhibited these functional abilities without hospitalization, inpatient care, or even psychotherapy. *See Halverson*, 600 F.3d at 930; *Tellez v. Barnhart*, 403 F.3d 953, 956 (8th Cir. 2005) (substantial evidence supported ALJ's decision to discount physician's opinion given that claimant's actual behavior was

clearly at odds with limitations described by the medical source); *Williams v.*

*Colvin*, No. 4:13CV395 TIA, 2014 WL 348587, at *11 (E.D. Mo. Jan. 31, 2014)

(treating psychiatrist's opinion inconsistent with other evidence of record that

claimant never required psychiatric hospitalization or exhibited severe psychiatric

symptoms). Inconsistency with other substantial evidence alone is a sufficient

basis upon which to discount a treating physician's opinion. *Goff v. Barnhart*, 421

F.3d 785, 790-91 (8th Cir. 2005).

3.    *Dr. Igbrude*

With respect to Dr. Igbrude's March 2012 MSS wherein he opined that

plaintiff experienced some marked and extreme limitations in functioning, the ALJ

accorded little weight to such opinion for the same reasons given for the limited

weight accorded Dr. Anyokwu's opinion. This was not error.

Between September 2011 and March 2012, plaintiff visited Dr. Igbrude on

six occasions during which time plaintiff reported that she was doing well and

feeling stable on her medication. To the extent plaintiff experienced a limited

exacerbation of symptoms, a slight adjustment to medication abated any significant

effects. With each visit, mental status examinations yielded essentially normal

results. No abnormalities were noted be present. At no time during his

examinations of plaintiff did Dr. Igbrude record any observations that plaintiff

experienced the significant and debilitating limitations as set out in his March 2012

MSS. Because of these inconsistencies between Dr. Igbrude's treatment notes and the opinions expressed in his MSS, the ALJ did not err in discounting Dr. Igbrude's opinion evidence on this basis. *Charles,* 375 F.3d at 784; *Hogan,* 239 F.3d at 961.

In addition, for the reasons discussed *supra*, Dr. Igbrude's opinion that plaintiff experienced marked to extreme limitations in the various domains of functioning is inconsistent with other substantial evidence on the record as a whole, including his own treatment notes and the treatment notes of other providers, and plaintiff's own daily activities. Inconsistency with other substantial evidence alone is a sufficient basis upon which to discount a treating physician's opinion. *Goff,* 421 F.3d at 790-91.

A review of the ALJ's decision shows him to have evaluated all of the evidence of record and to have provided good reasons for according little weight to the treating physicians' opinions. For the reasons set out above, substantial evidence on the record as a whole supports the ALJ's determination, and the Court will not disturb the determination. Inasmuch as sufficient evidence supports the ALJ's conclusion not to give substantial weight to the opinions of plaintiff's treating physicians, he was under no duty to recontact them for additional evidence or for clarification. *Samons v. Astrue*, 497 F.3d 813, 819 (8th Cir. 2007).

Plaintiff argues that the absence of opinion evidence from her treating physicians caused the ALJ to improperly draw upon his own inferences and engage in medical conjecture to determine plaintiff's ability to perform work-related activities. Plaintiff's argument is misplaced.

As an initial matter, the undersigned notes that, contrary to plaintiff's argument, the ALJ did not entirely reject the opinion evidence from the treating physicians. Although the ALJ accorded little weight to these opinions, a review of his RFC assessment shows him to have included significant mental limitations, demonstrating that some credit was given to these opinions. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

Further, according limited weight to this opinion evidence does not necessarily render the record devoid of substantial evidence upon which an ALJ can base his decision. The limitation of *opinion* evidence does not undermine an ALJ's RFC determination where other medical evidence in the record supports the finding. *See Cox v. Astrue,* 495 F.3d 614, 619-20 (8th Cir. 2007); *see also Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence not fatal to RFC determination where ALJ properly considered available medical and testimonial evidence); *Sampson v. Apfel*, 165 F.3d 616 (8th Cir. 1999) (although ALJ discounted the only opinion evidence of record, a review of the entirety of the medical record provided substantial evidence on the record as a whole to support

ALJ's decision). A review of the record here, as detailed above, shows that there was substantial medical and other evidence in the record upon which the ALJ could base his decision, even with the less weight accorded to the treating physicians' opinions. Such evidence includes the contemporaneous treatment notes made by multiple physicians that recorded their consistent observations of normal mental status examinations, with no abnormal findings other than isolated observations of a mildly depressed mood or plaintiff being somewhat anxious; plaintiff's continued positive response to medication with only minor adjustments made periodically thereto; and plaintiff's own description of her abilities to care for herself and for her ill parents, including her ability to leave the house alone, drive, and run errands multiple times each week. *See* 20 C.F.R. §§ 404.1528(b), 416.928(b) (signs of psychological abnormalities include abnormalities of behavior, mood, thought, memory, and orientation and must be shown by observable facts); *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (record showed medication to effectively control mental symptoms and that claimant was not significantly impaired despite medication).

As detailed by the ALJ and throughout this decision, there was sufficient other medical and testimonial evidence of record supporting the ALJ's decision that plaintiff had the RFC to perform work with additional restrictions that she engage in only occasional decision making; be exposed to only occasional changes

in the work setting; have only occasional interaction with the public, co-workers and supervisors; and be required to exercise judgment on the job only on an occasional basis. The ALJ's RFC assessment also accounted for periodic absences due to plaintiff's impairments. As such, it cannot be said that the ALJ's decision is not supported by substantial evidence on the record as a whole. Accordingly, the Court cannot reverse the decision even if substantial evidence may support a different outcome. *Cox*, 495 F.3d at 619 (even with "full awareness" of the "very real difficulties [claimant] appears to experience," the Court cannot reverse a decision that is based on substantial evidence).

Because the administrative record in this case contains sufficient information upon which the ALJ could make an informed decision on plaintiff's disability claim, the ALJ did not err by failing to elicit additional information from plaintiff's treating physicians or from a medical advisor. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004).

## VI. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial

evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  *Id.*; *see also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above on the claims raised by plaintiff on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled from November 25, 2010, through the date of the decision.  Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed.  *Davis,* 239 F.3d at 966.  This Court may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is affirmed, and plaintiff's Complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 8th day of September 2014.

 /s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE